UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MICHAEL FLOWERS,

                    Petitioner,

v.                                    Case No. 3:14-cv-1515-J-39PDB

SECRETARY, DOC, et al.,

                    Respondents.
_____


**ORDER**

**I.  STATUS**

Petitioner challenges a 2010 (Duval County) conviction for armed robbery.  Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) at 1. He filed the Petition on December 16, 2014, pursuant to the mailbox rule.[1]  He raises three grounds in the Petition.  Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely and, Alternatively, Answer to Petition (Response) (Doc. 11), and

_____

[1] The Court gives pro se inmate petitioners the benefit of the mailbox rule.  Houston v. Lack, 487 U.S. 266, 276 (1988).  See 28 U.S.C. § 2244(d).  In this instance, the Petition was provided to the prison authorities for mailing and stamped on December 16, 2014.  Petition at 1.  See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.  The Court will also give Petitioner the benefit of the mailbox rule with respect to his inmate state court filings when calculating the one-year limitation period under 28 U.S.C. § 2244(d).

they calculate that the Petition is untimely filed.  In support of the Response, they submitted an Appendix (Doc. 11).[2]  Petitioner filed a Reply to the State's Response (Doc. 14).  <u>See</u> Order (Doc. 5).

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a one-year period of limitation:

>    (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] The Court hereinafter refers to the exhibits contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

- 2 -

> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been discovered
> through the exercise of due
> diligence.
>
> (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d).

To adequately address Respondents' contention that Petitioner has failed to comply with the limitation period, the Court will provide a brief procedural history. Petitioner was charged by amended information with armed robbery. Ex. A at 19. A jury returned a verdict of guilty as charged. Id. at 50; Ex. B at 481.

On March 3, 2010, the trial court sentenced Petitioner to 25 years in prison. Ex. A at 112-13, 130-56. Petitioner appealed. Id. at 124; Ex. C; Ex. D; Ex. E; Ex. F; Ex. G. On March 21, 2011, the First District Court of Appeal (1st DCA) affirmed per curiam. Ex. H. The mandate issued on May 27, 2011. Ex. K. The conviction became final on June 19, 2011 (90 days after March 21, 2011) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion.").

The limitation period began to run on June 20, 2011, and ran for a period of 269 days, until Petitioner, on March 15, 2012, filed a Petition Alleging Ineffective Assistance of Appellate Counsel in the 1st DCA.[3] Ex. L. This post conviction motion tolled the limitation period until the April 13, 2012 denial of the petition alleging ineffective assistance of appellate counsel. Ex. M. The limitation period began to run on April 14, 2012, and ran for a period of 95 days, until Petitioner filed a Rule 3.850 motion on July 18, 2012. Ex. N. This motion tolled the limitation

---

[3] Respondents base their calculations on the alleged filing date, March 21, 2012, rather than the date that the document was certified as being provided to the prison official for mailing. Initially, the Court notes that the filing date with the clerk of the 1st DCA does not appear on the document. Ex. L at 1. The Attorney General's Office received the document on March 20, 2012. Id. The document is stamped "Received" March 15, 2012. Id. Petitioner, in his certificate of service, certifies that he handed the document to a prison official for mailing on March 15, 2012. Id. at 18. "For purposes of calculating time, [the Court applies] the mailbox rule and refer[s] to the dates [Petitioner] signed his motions or petitions and submitted them to prison authorities." Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1382 n.1 (11th Cir. 2006) (per curiam) (citation omitted). Despite Petitioner's failure to comply with the procedure of obtaining a date stamp with the date and the officer's initials, see Rule 33.210.102(8)(g), Petitioner will be given the benefit of the mailbox rule because Respondents have not rebutted the presumption that the document was filed on the date specified in the certificate. Cole v. McNeil, No. 3:09cv216/WS/MD, 2010 WL 1757945, at *2 n.5 (N.D. Fla. April 1, 2010) (Not Reported in F.Supp.2d), report and recommendation adopted by 2010 WL 2079691 (N.D. Fla. May 25, 2010). See Sargent v. McNeil, No. 4:08cv175-SPM/WCS, 2009 WL 903279, at *2 (March 31, 2009) (Not Reported in F.Supp.2d) (finding failure to rebut the presumption that the prisoner's document was filed on the date specified in the certificate of service and deeming the petition timely filed). Thus, the Court rejects Respondents' calculations to the extent they fail to give Petitioner the benefit of the mailbox rule.

period, and it remained tolled until the mandate issued on December
30, 2014.  Ex. V.  Petitioner timely filed his federal petition on
December 16, 2014, prior to the issuance of the mandate.

Based on all of the foregoing, the Petition, filed on December
16, 2014, pursuant to the mailbox rule, is timely.  Therefore,
Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus
as Untimely is due to be denied.

## II.  STANDARD OF REVIEW

The AEDPA governs a state prisoner's federal petition for
habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga.
Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.
2016), cert. denied, 2017 WL 1199485 (U.S. Apr. 3, 2017).  "'The
purpose of AEDPA is to ensure that federal habeas relief functions
as a guard against extreme malfunctions in the state criminal
justice systems, and not as a means of error correction.'"  Id.
(quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). A state court's factual findings
> are presumed correct unless rebutted by clear

and convincing evidence.[4] Id. § 2254(e)(1);
Ferrell v. Hall, 640 F.3d 1199, 1223 (11th
Cir. 2011).

..."It bears repeating that even a strong case
for relief does not mean the state court's
contrary conclusion was unreasonable."
[Harrington v. Richter, 562 U.S. 86, 101
(2011)] (citing Lockyer v. Andrade, 538 U.S.
63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144
(2003)). The Supreme Court has repeatedly
instructed lower federal courts that an
unreasonable application of law requires more
than mere error or even clear error. See,
e.g., Mitchell v. Esparza, 540 U.S. 12, 18,
124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer,
538 U.S. at 75 ("The gloss of clear error
fails to give proper deference to state courts
by conflating error (even clear error) with
unreasonableness."); Williams v. Taylor, 529
U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389
(2000) ("[A]n unreasonable application of
federal law is different from an incorrect
application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013),

cert. denied, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the

last state court decision that evaluated the claim on its merits.

Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th

Cir. 2016).[5]  Regardless of whether the last state court provided

---

    4 "This presumption of correctness applies equally to factual
determinations made by the state trial and appellate courts." Pope
v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012)
(quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert.
denied, 133 S.Ct. 1625 (2013).

    5 As recently suggested by the Eleventh Circuit in Butts v.
GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), in order to
avoid any complications if the United States Supreme Court decides
to overturn Eleventh Circuit precedent as pronounced in Wilson v.
Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en

a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. Id. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; Marshall, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law

---

banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

beyond any possibility for fairminded disagreement." <u>Richter</u>, 562
U.S. at 103.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

Petitioner, in his first ground, asserts that the trial court
erred by excluding evidence relevant to the alibi defense,
resulting in the denial of Petitioner's constitutional rights under
the Fifth and Fourteenth Amendments to the United States
Constitution. Petition at 5. Respondents first claim that
Petitioner did not adequately exhaust this ground in the state
court system. Response at 12, 19-20. On direct appeal, Petitioner
presented the following issue: "[t]he trial court committed
reversible error in excluding the invitation when the invitation
was properly authenticated and relevant to appellant's alibi
defense and the court failed to consider any alternative
sanctions." Ex. C at i (capitalization omitted). Under the Table
of Authorities in his brief, Petitioner references the Fifth and
Fourteenth Amendments to the United States Constitution. <u>Id</u>. at
iii. In the brief, Petitioner states the following:

> The trial court's ruling denied appellant his
> due process right under the Fifth and
> Fourteenth Amendments of the United States
> Constitution and Article I Section 9 of the
> Florida Constitution to defend against the
> State's evidence. <u>See</u>, <u>generally</u>, <u>Chambers v.</u>
> <u>Mississippi</u>, 410 U.S. 284 (1973). Appellant
> is, therefore, entitled to a new trial.

Ex. C at 27.

Respondents urge this Court to find that this ground is procedurally defaulted. In addressing the question of exhaustion, this Court must ask whether Petitioner's claim was properly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

Upon due consideration, Petitioner fairly presented the constitutional issue presented in ground one to the state court.

He provided the federal source of law. He referenced the United States Constitution in the Table of Authorities. In the body of the appeal brief, he provided the state court with a meaningful opportunity to address his constitutional claim. The Court finds that Petitioner adequately exhausted the constitutional due process claim raised in ground one.

Alternatively, Respondents address the merits of ground one. Response at 21-34. Petitioner claims that the trial court's ruling prevented him from defending against the state's evidence. In this regard, the question arises as to whether Petitioner was deprived of a fair trial:

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Mr. Justice Black, writing for the Court in In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948), identified these rights as among the minimum essentials of a fair trial:
>
>> 'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.'

Chambers v. Mississippi, 410 U.S. 284, 294 (1973).

Of initial significance to this Court's review, "federal courts will not generally review state trial courts' evidentiary determinations." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014) (citations omitted), cert. denied, 135 S.Ct. 2323 (2015). Since it is not the province of this Court to reexamine such evidentiary determinations, habeas relief is invoked only if state court error denied Petitioner fundamental fairness, that is "the error 'so infused the trial with unfairness as to deny due process of law.'" Id. (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)).

The record shows that Petitioner's aunt, Tunessia Bell King testified at the trial. Ex. B at 355-72. She testified that during the time of the robbery, Petitioner attended a baby shower and slept on a couch. Id. at 356-57. Ms. Bell King testified that she overheard the baby's mother say that February 22, 2009 was the date of the baby shower. Id. at 358. Ms. Bell King explained that she received an invitation, but she did not keep it. Id. at 359.

After Ms. Bell King's testimony, defense counsel, Amanda Kuhn, stated that she had an invitation in her possession. Id. at 364. She said that for strategic reasons, she had not planned to use it, nor had she disclosed it to the state. Id. She proffered the evidence. Id. at 365. Ms. Bell King said it was similar to her invitation, but it was not the one she had received. Id. at 365-66. On voir dire, Ms. Bell King said she did not bring the

invitation to court and she did not know where it came from. Id. at 366-67.

Ms. Kuhn explained that she had obtained the invitation from the defendant's mother, who did not attend the baby shower. Id. at 367. The state objected, claiming a Richardson violation. Id. at 368. The court inquired as to whether defense counsel had any way to authenticate the invitation. Id. at 369. Ms. Kuhn suggested that Ms. Bell King might be able to, but the court promptly rejected that suggestion based on the fact that Ms. Bell King already said that she did not know where the invitation came from and she did not bring it to court. Id.

Alternatively, Ms. Kuhn suggested that the defendant's mother might be able to authenticate the invitation because she took the invitation out of the baby's mother's baby book. Id. at 372. The court promptly rejected this suggestion because the defendant's mother sat through the entire trial. Id. at 372-73. Also, the defendant's mother had retrieved the invitation from Rashida Foster's baby book. Id. at 373.

The court said that Rashida Foster, who was under subpoena and listed as a witness, could possibly authenticate the invitation if counsel wanted to call her. Id. The court stated that it would not allow the defendant's mother, who did not attend the shower, who sat through the entire trial, and who had never been listed as a witness, to be called for that purpose. Id. at 374. The court left it to defense counsel to decide whether or not to call Ms.

Foster. Id. Petitioner took the stand and testified that he attended the shower and slept on the couch. Id. at 378.

Ultimately, Ms. Kuhn did not call Ms. Foster. Id. at 398-99. The court asked whether the defense was going to call Ms. Foster as, arguably through her, it would not be hearsay evidence. Id. at 399. The court asked whether Petitioner had discussed the matter with counsel, and Petitioner responded affirmatively. Id. He told the court that he was in agreement with his attorney that he did not want to call Ms. Foster. Id.

Respondents argue that Petitioner has not established a due process violation, or that the state court's ruling was contrary to or an unreasonable application of Chambers, or that the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Response at 29-30. Of import, the trial court based its decision on the fact that Petitioner had not called the appropriate witness to authenticate the invitation, and the trial court gave Petitioner the opportunity to call Ms. Foster, if Petitioner so desired. Petitioner and his counsel conferred and decided not to call Ms. Foster. Thus, the defense failed to present "[p]rima facie evidence . . . to prove that the evidence [was] authentic." State v. Love, 691 So.2d 620, 621 (Fla. 5th DCA 1997) (citation omitted).

Based on the above, the trial court did not err in excluding the evidence of the baby shower invitation. Even if the court did

err, the ruling did not fatally infect the entire trial so as to justify habeas relief. Petitioner had a fair opportunity to present other critical evidence to support his alibi defense. He took the stand and testified that he attended the shower. He also presented the testimony of his aunt who corroborated his testimony that he attended the shower and slept on the couch. The exclusion of the evidence of the baby shower invitation did not render Petitioner's trial fundamentally unfair. Thus, the 1st DCA's resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

## B. Ground Two

In his second ground, Petitioner claims his appellate counsel was ineffective for failing to raise the issue challenging the sentencing judge's consideration of, and reliance upon impermissible factors when imposing the sentence. Petition at 10. Petitioner raised this claim in his Petition Alleging Ineffective Assistance of Appellate Counsel. Ex. L. Respondents concede that Petitioner exhausted this ground in the state court system. Response at 12, 36. Petitioner argued that he should have received a sentence of less than 13 years, as he was not as culpable as his co-defendant Timothy Cooper, who actually had a gun and pistol whipped the victim. Ex. L at 3. Petitioner described his role as minor because he was the getaway driver. Id. at 4.

The trial court sentenced Petitioner to 25 years in prison, providing this explanation:

Mr. Flowers, here's what I'm sentencing you for. The jury found you guilty of armed robbery. And in this armed robbery you, being as culpable as the others, drove a car to a business where a completely innocent person who was working that night goes out back of his business to take a break. And then two of your cohorts jump out of that car and not only take what he had on him but hit him. He didn't resist. I mean, there was no reason for that. He was hit causing him injury to his face.

And then you, sir, drove the car. And at that point you're not -- the victim of the robbery isn't at risk, but when you're driving that car fleeing from the police you put yourself, the people in the car, the police, anybody else on the road you put at risk then and create a danger.

. . . It is clear to me, Mr. Flowers that you will not abide by the law and are willing to harm innocent people and put our community at risk.[6]

Based on the jury finding you guilty of armed robbery, I will adjudicate you to be guilty of that armed robbery and sentence you to 25 years in the Florida State Prison[.]

Ex. A at 154-55.

The 1st DCA denied the petition alleging ineffective assistance of appellate counsel. Ex. M. Thus, there is a qualifying state court opinion for AEDPA purposes. Based on the 1st DCA's denial of the claim on its merits, this Court must "review it using the deferential standard set out in § 2254(d)(1)."

---

[6] The trial court referenced Petitioner's juvenile record, the repeated opportunities given to him "to get straight," and Petitioner's failure to abide by the law. Ex. A at 155.

Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1330 (11th Cir.), cert. denied sub nom. Rambaran v. Jones, 137 S.Ct. 505 (2016).

When addressing a claim of ineffective assistance of appellate counsel, the two-part Strickland standard is applicable:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105, 131 S.Ct. at 788 (quotation marks and citations omitted); see also Gissendaner v. Seaboldt, 735 F.3d 1311, 1323 (11th Cir.2013) ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and alteration omitted). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 102, 131 S.Ct. at 786.

Rambaran v. Sec., Dept. of Corrections, 821 F.3d at 1331.

Petitioner was convicted of armed robbery, while his co-defendant, Mr. Cooper, was convicted of unarmed robbery. See Ex.

A at 147-53.  Not only did the trial court reference the finding of the jury that Petitioner was guilty of armed robbery,[7] it also referenced other factors to support its decision to sentence Petitioner to twenty-five years, including relying on Petitioner's past record with numerous un-seized opportunities to change his life; his being the driver of the car that went to a business where his co-horts robbed and injured an innocent worker; and Petitioner's overall inability to abide by the law and his willingness to harm innocent people and place others at risk.

Upon review of the entire record, appellate counsel did not perform deficiently.  Appellate counsel raised the issue concerning the exclusion of the evidence of the baby shower invitation.  Ex. C; Ex. D; Ex. E; Ex. F.  After the issue was fully briefed, the 1st DCA scheduled oral argument.  Ex. G.  In the end, the 1st DCA per curiam affirmed.  Ex. H.

Upon review, there is a reasonable basis for the state court to deny relief on the claim of ineffective assistance of appellate counsel; therefore, the denial must be given deference.  Ex. M.  On this record, the Court finds that the 1st DCA could have reasonably determined that appellate counsel was not ineffective for not raising this particular claim on direct appeal.  "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."

_____

[7] Petitioner's conviction for armed robbery, rather than simple robbery, is a distinction that certainly makes a difference.

Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam) (citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).  The Eleventh Circuit has explained that "[i]n assessing an appellate attorney's performance, we are mindful that 'the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.' [...]  Rather, an effective attorney will weed out weaker arguments, even though they may have merit."  Id. (citing Heath, 941 F.2d at 1130-31).

The 1st DCA's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny.  Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  Accordingly, ground two is due to be denied.

### C.  Ground Three

In his third ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object when the sentencing court impermissibly relied upon uncharged conduct and unsubstantiated allegations of misconduct when imposing its sentence.  Petition at 15.  In order to prevail on this Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different).

Petitioner exhausted this ground by raising it in his Rule 3.850 motion, Ex. N, and his Third Amended Motion. Ex. P. The trial court denied relief, Ex. Q, and the First District Court of Appeal per curiam affirmed. Ex. S. Respondents concede that this ground is properly exhausted. Response at 12, 53.

Upon review, the circuit court set forth the applicable two-pronged <u>Strickland</u> standard as a preface to addressing the claims of ineffective assistance of counsel. Ex. Q at 46. Petitioner contends that he received a greater sentence than his more culpable co-defendant because the circuit court unlawfully relied on uncharged offenses, including battery, aggravated battery, or fleeing and eluding a law enforcement officer. <u>Id</u>. at 50. Petitioner believes that he and his co-defendant should have received comparable sentences.

In addressing the claim of ineffective assistance of counsel, the circuit court recognized that,

> When imposing a sentence, a sentencing court cannot rely upon "unsubstantiated allegations of misconduct or speculation that the Defendant probably committed other crimes." <u>Craun v. State</u>, 124 So.3d 1027, 1029 (Fla. 2d DCA 2013) (citation omitted). "An ineffective assistance claim based on counsel's failure to object to a sentencing court's consideration of improper factors is cognizable in a motion for postconviction relief." <u>Id</u>. (citation omitted). However, the record substantiates that the Defendant did provide critical assistance to help his

> co-defendants commit a violent crime with a
> firearm and that he fled law enforcement
> officers in a reckless and dangerous manner.
> The State was not required to charge the
> Defendant with battery, aggravated battery, or
> fleeing and eluding a law enforcement officer,
> or prove each element of those crimes, before
> the sentencing judge could take into account
> the facts and circumstances surrounding the
> Defendant's actions in providing assistance to
> the Armed Robbery. As such, defense counsel
> was not ineffective for failing to object to
> the basis for the sentence because they were
> not improper.

Ex. Q at 50-51.

The circuit court rejected this claim of ineffective assistance of trial counsel. The First District Court of Appeal (the 1st DCA) affirmed. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has not accomplished that task.

Indeed, if there is any reasonable basis for the court to deny relief, the denial must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of

Strickland, or based on an unreasonable determination of the facts. Ground three is due to be denied.

The circuit court determined that the basis for the sentence was not improper, and therefore, counsel could not be ineffective for failing to object to the court's reliance on the fact that the victim had been battered and injured and the Defendant had placed an entire community at risk by fleeing and eluding law enforcement officers. Ex. Q at 50-51. In this instance, the circuit court opined that improper factors were not taken into account at sentencing as the court did not rely on unsubstantiated allegations of misconduct or mere speculation, but instead relied upon a record showing Petitioner's critical assistance with the crime resulting in injury to the victim and risk to the community. Id. Indeed,

> [i]f any one participant in a robbery carried a firearm during the commission of the crime, all of the participants are guilty as principals under section 777.011, Florida Statutes (1993). See § 812.13(2)(a)(1993); Hicks v. State, 583 So.2d 1106 (Fla. 2d DCA 1991); Hough v. State, 448 So.2d 628 (Fla. 5th DCA 1984). Second, it is sufficient for the jury to find that appellant aided and abetted the codefendant to find him also guilty of any crime committed by the codefendant in pursuance of the common scheme. Davis v. State, 275 So.2d 575 (Fla. 1st DCA 1973). To be found guilty as a principal it is not necessary for the aider and abettor to know of every detail of the crime so long as there exists evidence of the aider's intent to participate.

Jones v. State, 648 So.2d 1210, 1211 (Fla. 4th Dist. App. 1995) (per curiam).

Although Petitioner did not pistol-whip the victim, Petitioner participated in the crime as the driver, and the jury found him guilty of armed robbery with a firearm as a principal, not just robbery.[8] The victim testified that two robbers exited the vehicle and they had guns. Ex. B at 250-51. The victim also testified that after he was robbed, the driver of the car, the third participant, sped away after the two robbers returned to the car. Id. at 254. The victim attested that he did not get a good look at the driver due to the dark tinted windows of the vehicle. Id. Officer Joseph Overall pursued the vehicle at a high rate of speed and the driver began running stop signs. Id. at 270-72. Officer Overall tried a pit maneuver, but it was unsuccessful. Id. at 272.

Here, unlike Craun v. State, 124 So.3d 1027, 1030-31 (Fla. 2nd DCA 2013), there was more than unsubstantiated allegations of misconduct or mere speculation about events. The state's witnesses presented detailed testimony about the crime, the driver's evasive maneuvers, and the extended police chase. Even if counsel had objected, based on the record, the objection would have been overruled.

Here, defense counsel was not ineffective for failure to object. Under these circumstances, defense counsel's performance cannot be deemed deficient. On this record, Petitioner has failed

---

[8] Again, a jury found Petitioner's co-defendant, Timothy Cooper, guilty of a lesser offense, and the circuit court sentenced Mr. Cooper to thirteen years in prison. Ex. A at 145.

to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance for failing to object to these statements. Even assuming deficient performance by his counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had objected. Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. Thus, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground three is due to be denied.

Accordingly, it is now

**ORDERED:**

1. Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely (Doc. 11) is **DENIED.**

2.  The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

3.  The **Clerk of the Court** shall enter judgment accordingly and close this case.

4.  If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[9]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of May, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 5/10
c:

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

Michael Flowers
Counsel of Record